UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALAN M. MARTAY, §<br>    *Plaintiff*, §<br>§<br>vs. §<br>§<br>JO ANNE B. BARNHART, §<br>Commissioner, Social Security Administration §<br>    *Defendant*. § | CIVIL ACTION H-05-0154 |

**OPINION ON SUMMARY JUDGMENT**

Plaintiff Alan M. Martay filed this action for judicial review of an unfavorable decision on his claim for disability benefits by the Commissioner of the Social Security Administration. Before the court are the parties' cross-motions for summary judgment. Having reviewed the motions and the administrative record, the court concludes that Martay's motion for summary judgment (Dkt. 13) should be granted, the Commissioner's motion (Dkt. 11) denied, and the case remanded to the Commissioner for further administrative proceedings consistent with this opinion.

**I.    BACKGROUND**

    **A.    Procedural History**

Martay filed an initial application for disability insurance benefits under Title II of the Social Security Act with the Social Security Administration on October 9, 2002. (Tr. 21, 59-61).[1] Martay contends he is disabled and has been unable to work since December 31, 2001. (Tr. 69). After Martay's application was denied at the initial and reconsideration levels (Tr. 21, 35-46), Martay requested a hearing before an administrative law judge ("ALJ"), which was held on July 22, 2004. (Tr. 21, 47, 614-39). In a decision dated August 25, 2004, the ALJ denied Martay's application for

---

[1] The transcript of the administrative record will be cited as "Tr. __".

disability benefits, finding that Martay was not disabled as defined by the Act. (Tr. 18-30). The Appeals Council approved the ALJ's decision on December 3, 2004, transforming it into the final decision of the Commissioner. (Tr. 4-17). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

### B. Factual History

Martay was 59 years of age at the time of the hearing. (Tr. 28). Martay's past relevant work experience includes employment as a salesman/grocery stock clerk. (Tr. 28). Martay was present and testified at the hearing, and was represented by counsel. (Tr. 614). The ALJ also heard testimony from Dr. Nancy Tarrand, a medical expert, and Emma Vasquez, a vocational expert. (Tr. 614-39). In his testimony, Martay alleged he was disabled due to a back injury and tendonitis of the shoulder, and he also indicated that he suffers problems with depression. (Tr. 621-22). Dr. Tarrand reviewed the medical records for the ALJ, and testified that Martay's mental impairments did not meet or equal one of the listings. (Tr. 628).

After reviewing the evidence, the ALJ determined that Martay was not disabled within the meaning of the Social Security Act, using the five-step analysis specified in 20 C.F.R. § 416.920(a). (Tr. 30). At step one, the ALJ found Martay had not engaged in substantial gainful activity since his alleged onset date of the disability on December 31, 2001. (Tr. 22 ). At step two, the ALJ found Martay has severe impairments; in particular, degenerative changes of the spine and right shoulder, a depressive disorder, and a personality disorder, but held that these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, as is required at step three to be presumed disabled. (Tr. 22-24, 29). Also at step two, the ALJ analyzed Martay's problems with prostatitis and cataracts, and held these to be not severe because they only minimally affected his ability to perform work-related activities. (Tr. 24). At the fourth step, the

ALJ found Martay did not have the residual functional capacity to perform his past relevant work as a grocery stock clerk. (Tr. 29). However, at step five, based upon a hypothetical question posed to Emma Vasquez, the ALJ concluded that Martay is able to perform jobs existing in significant numbers throughout the regional and national economy. (Tr. 28 ). Thus, the ALJ held Martay was not disabled and not entitled to disability benefits under the Social Security Act. (Tr. 30).

## II.   APPLICABLE LAW

### A.   Standard of Review

In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).  The federal courts review the Commissioner's denial of Social Security benefits to ascertain whether (1) the final decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In applying this standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If the Commissioner's findings are supported by substantial evidence, they must be affirmed. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Myers*, 238 F.3d at 619. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson*, 309 F.3d at 272. The

courts strive for judicial review that is deferential but not so obsequious as to be meaningless. *Brown*, 192 F.3d at 496.

      B.      **Standard for Determining Disability under the Act**

In order to qualify for disability benefits, a plaintiff must prove he has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The administrative law judge must follow a five-step sequential analysis to determine whether a claimant is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, i.e., working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Can the claimant still perform his past relevant work? If so, the claimant is not disabled. If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work the claimant can do? If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

### III.   ANALYSIS

Martay does not challenge the ALJ's findings with regard to his physical ailments, but he does contest the ALJ's analysis of his mental impairments. Martay first contends the ALJ failed to make contact with his treating physician to resolve ambiguities in the medical record, resulting in flawed conclusions at both step three and five. Martay further challenges the ALJ's analysis at step five on a number of other grounds; most significantly, the ALJ's failure to conduct a function-by-function assessment of how Martay's mental impairments reduced his residual functional capacity to perform substantial gainful activity.

#### A.   **Failure to Recontact Treating Physician (Step Three)**

Martay maintains the ALJ should have contacted his treating psychiatrist, Dr. Theodore Pearlman, for clarification of Dr. Pearlman's medical notes before determining that Martay was not presumptively disabled at step three, pursuant to Social Security Ruling 96-5p.[2] Dr. Pearlman treated Martay two to four times a week since April 2002, compiling numerous notes and reports on Martay's mental impairments. (Tr. 426-519). Dr. Pearlman concluded that due to major depression and obsession over his physical and psychological problems, Martay did not have the mental ability or aptitude to engage in substantial gainful activity in a competitive work environment. (Tr. 445-51). The ALJ rejected Dr. Pearlman's conclusion as "not consistent with the evidence of record considered as a whole." (Tr. 26).

An ALJ is not always bound to accept the medical opinions of a treating physician, but administrative regulations and rulings limit the ALJ's discretion to disregard such opinions. As a

---

[2] While Social Security Rulings are not binding on this court, they must be applied by the ALJ. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); 20 C.F.R. § 402.35(b)(1).

starting point, 20 C.F.R. § 404.1527(d)(2) provides that a treating physician's opinion on the nature and severity of a social security disability claimant's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. Another regulation imposes a duty upon the Commissioner to re-contact a claimant's treating physician in cases where the evidence is inadequate to make a disability determination, and the treating physician's report is internally conflicting, ambiguous, incomplete, or based on medically unacceptable diagnostic techniques. 20 C.F.R. § 404.1512(e). This duty is further amplified by SSR 96-5p:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and **the adjudicator cannot ascertain the basis of the opinion from the case record,** the adjudicator must make "every reasonable effort" to re-contact the source for clarification of the reasons for the opinion.

SSR 96-5p, at *6 (emphasis supplied).

Fifth Circuit precedent is consistent with the Commissioner's regulations and rulings on this subject. Remand for failure to re-contact a treating physician is appropriate where (1) the physician's records are inconclusive or otherwise inadequate to receive controlling weight, (2) the record contains no other medical opinion evidence based on personal examination or treatment, and (3) the claimant shows prejudice. *Newton v. Apfel,* 209 F.3d 448, 453, 458 (5th Cir. 2000). Each of these elements is satisfied here.

The primary evidence against Dr. Pearlman's conclusion was the testimony of medical expert Dr. Nancy Tarrand, who neither treated nor examined Martay but based her opinion on a review of the file containing Dr. Pearlman's notes. (Tr. 627-33). The fact that Dr. Tarrand neither treated nor examined Martay does not in itself undermine her testimony. *See Ransom v. Heckler*, 715 F.2d 989,

993-94 (5th Cir. 1983) (opinion testimony of non-treating medical expert based upon adequate medical evidence in the record may constitute substantial evidence of non-disability). What does torpedo Dr. Tarrand's testimony is that it is based almost entirely on her interpretation of Dr. Pearlman's notes, which are mostly illegible and undecipherable. (Tr. 440, 442, 443, 453, 460, 462, 463, 467, 469, 471, 476, 494, 497, 504, 516).

Dr. Tarrand herself candidly conceded her difficulty reading and comprehending Dr. Pearlman's notes. Indeed, this complaint became a regular refrain of her testimony: in the seven transcript pages comprising her testimony, she refers to this difficulty at least a dozen times. (Tr. 627-33). Her response to one of the very first questions sets the tone:

> Q.  Is there any other information you need or questions you need answered before you give your opinion as a medical expert in this case?
>
> A.  It would be nice if Dr. Pearlman would write so I could read it but other than that, no, sir.

(Tr. 627). Her subsequent testimony confirms that this was a serious complaint, and not just a weak stab at humor. *Id.* ("[T]hese notes are very difficult to read"); Tr. 627-28 ("Now, I'm not sure the exact dates on which these things were done but that's rather confusing to me."); Tr. 628 ("So it's really difficult for me to understand the functional limitations."); *id.* (" It seems like after [the insurance company requested notes] he started taking notes but I can't read them. So I cannot say that he meets a listing based on what I have."); Tr. 629 ("The treatment notes are, as I said, very difficult to read..."); Tr. 631 ("I think he could, based on what I can make of these records, do detailed but not complex work...").

Most significantly of all, Dr. Tarrand appears to concede on cross-examination that Dr. Pearlman's records could be interpreted as demonstrating that Martay satisfied the criteria for a

listing-level impairment of depression. Asked whether Dr. Pearlman's records, taken "at face value," would satisfy the listing criteria, Dr. Tarrand responded:

> A. Right. If those were taken at face value, but did he mean at the beginning of treatment, after he's improved? You know, he definitely appears from what I can make out here to have improved to some extent, so when these things applied is not clear to me, and how he arrived at these restrictions is not clear. In terms of, say, repeated episodes of decompensation lasting at least two weeks or more within a 12-month period – I don't see discrete decompensations but then **again, I will admit I have trouble reading the records.**
> . . .

Tr. 632 (emphasis supplied). Dr. Tarrand reiterates the point a few lines later:

> Q. So again, taking this at face value, we have an individual who would meet a listing or at least a period of 12 months. You can't say whether he's more than that but if we took this at face value, it seems to establish it for at least a year, does it not?
>
> A. Well, if we take it at face value, sure, but **some description of these decompensations would be nice**, and **I don't know how he arrives at the 12-month mark.** Does he mean 12 months from the date that he first saw him or 12 months from the date that he filled out this piece of paper, which I think was relatively recently? He said his most recent appointment was on 1/29/03 so **I'm not sure when he actually filled out this form**. It doesn't look to me like he dated it. The date is left blank. **So I'm not sure when this 12-month period would start or stop**. Most people – most psychiatrists would expect to be able to get some significant remission for a patient of depression in less than 12 months, especially in an individual who was not having a long history of treatment-resistant depression. So I would – **it would be great to have more detail from him about what he means by that**.

Tr. 633 (emphasis supplied).

This testimony demonstrates beyond question that, while both the ALJ and Dr. Tarrand disagreed with the treating physician's opinion regarding the severity of Martay's mental impairment, neither the ALJ nor Dr. Tarrand could "ascertain the basis of the opinion" offered by the treating physician Dr. Pearlman. Under these circumstances, the ALJ was required by SSR 96-5p

to contact Dr. Pearlman for clarification before determining that Martay did not meet or equal a listing for a mental impairment at step three.

It is equally clear that Martay has satisfied *Newton's* three-part test for a remand directing the ALJ to re-contact a treating physician. Dr. Pearlman's records were undoubtedly inconclusive and inadequate to be given controlling weight, as the medical expert's own testimony demonstrates. Dr. Tarrand neither treated nor examined Martay, and no other medical opinion evidence based on personal examination or treatment is cited by the ALJ. Finally, prejudice has been convincingly shown by Dr. Tarrand's candid admission (quoted above) that Dr. Pearlman's assessment of the claimant's residual functional capacity, taken at "face value," establishes a listing level mental impairment. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04. In other words, if Dr. Pearlman's assessment was correct, Martay would prevail at step three of the sequential disability analysis.

It must be emphasized that this is not a case of a few illegible words and phrases in an otherwise clear document, or some minor confusion about a non-critical issue. Dr. Tarrand repeatedly hedged and qualified her testimony, stressing her uncertainty about the medical records on which her medical opinions were based. She concluded her testimony with an implicit request that Dr. Pearlman be re-contacted for clarification. Tr. 633 ("So I would – it would be great to have more detail from him about what he means by that").[3] Despite these persistent warning signals, the ALJ chose not to seek further clarification, and proceeded to disregard the treating physician's opinions in favor of a medical expert who had never seen the claimant. If ever there was a case tailor-made for the application of SSR 96-5p, this is that case.

---

[3] In a letter presented to the Appeals Council after the hearing, Dr. Pearlman expressed his willingness to do just that: "Had Dr. Tarrand contacted me for a doctor-to-doctor discussion about your case, I would have been quite happy to have typed out for her any illegible documentation requiring deciphering." (Tr. 16).

B.     **Inadequate Function-by-Function Analysis (Step Five)**

Martay further contends that the ALJ failed to properly determine his mental residual functional capacity by: (1) not providing an adequate assessment of Martay's mental impairments and how they related to his functional ability to perform work; and (2) posing a hypothetical flawed for incorporating only one aspect of Martay's mental limitations.

Martay asserts the ALJ erred in determining his mental residual functional capacity because the ALJ did not make the specific findings required by SSR 96-8p. The court agrees. The ALJ found that Martay suffered from two severe mental impairments: (1) depressive disorder, and (2) personality disorder. (Tr. 22-23). The only finding made concerning Martay's mental residual functional capacity, i.e., how these impairments impacted Martay's ability to work, was that Martay could perform detailed but not complex tasks. (Tr. 27-29).

SSR 96-8p requires a function-by-function analysis of how a severe impairment impacts a claimant's residual functional capacity. It declares that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." SSR 96-8p, at *1. Paragraph (c) explains how mental abilities are to be evaluated in relation to residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(5)(ii)(c). Paragraph (c) expressly includes: (1) "limitations in understanding, remembering, and carrying out instructions" and (2) "responding appropriately to supervision, co-workers, and work pressures in a work setting." *Id.*

At most, the ALJ's analysis briefly touches upon the first of these. It does not evaluate the impact of Martay's mental impairments with respect to the second at all. This does not adequately

address the two aspects the regulations consider relevant to determining residual mental functional capacity. It is true that at least one court has noted that "SSR 96-8p is less than clear on what an ALJ is required to do when explaining mental RFC," specifically regarding "the manner in which the ALJ may translate mental RFC into categories or otherwise express it in shorthand fashion." *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1036 n.27 (E.D. Wis. 2004). And the Fifth Circuit has not provided specific guidance on what exactly is a sufficient mental function-by-function analysis required by paragraph (c). Nevertheless, the Fifth Circuit has made clear the function-by-function analysis required under the analogous paragraph (b)–dealing with physical abilities–must include all seven functions mentioned in that paragraph. *See Myers v. Apfel*, 238 F.3d 617, 620-21 (5th Cir. 2001) (the ALJ must fully address the physical functional limitations of sitting, standing, walking, lifting, carrying, pushing, and pulling to be in accordance with the requirements of SSR 96-8p). By parity of reasoning, an ALJ who finds an applicant to have severe mental impairments must assess the effect of those disabilities on an applicant's residual capacity for work in reference to the two explicitly included functions of paragraph (c). This reading of the regulation was adopted in *Spears v. Barnhart*, 284 F. Supp. 2d 477, 484 (S.D. Tex. 2002).

It is true that procedural perfection in administrative proceedings is not required, and procedural mistakes warrant a remand only if a claimant's substantial rights have been affected. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (*per curiam*). Martay may very well have been prejudiced by the ALJ's failure to address the "appropriate response" functions described in paragraph (c). The only evidence in the record directly addressing Martay's ability to "respond[] appropriately to supervision, co-workers, and work pressures in a work setting" is contrary to the ALJ's decision. The Mental Impairment Questionnaire prepared by Dr. Pearlman concludes that

Martay either has no useful ability to function or is unable to meet the competitive standards of a work setting to accept instructions and respond appropriately to criticism from supervisors; get along with co-workers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; or to deal with normal work stress. (Tr. 448). Therefore, this case must be remanded to the Commissioner to determine the impact of Martay's severe mental impairments on his residual capacity for substantial gainful activity considering all elements of paragraph (c).[4]

Martay raises other objections to the ALJ's decision, including failure to consider new and material evidence provided after the hearing by Dr. Pearlman. (Tr. 15-16). Because the proper legal standards were not followed at steps three and five in the process, the court finds it unnecessary to reach those issues.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision denying benefits is reversed and remanded for further proceedings consistent with this opinion.

Signed on July 18, 2005, at Houston, Texas.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge

---

[4] This determination leads the court to further concur with Martay that the hypothetical posed to the vocational expert, Emma Vasquez, was flawed and therefore inadequate to base a disability determination at step five. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ ... a determination of non-disability based on such a defective question cannot stand").